

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 24, 2022

**BY ECF**
The Honorable Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
40 Foley Square
New York, New York  10007

     Re:    <u>United States v. Jaysean Sutton</u>, 19 Cr. 706 (ALC)

Dear Judge Carter:

     After five felony convictions in New York and Connecticut for crimes of violence or weapons,[1] defendant Jaysean Sutton led a brazen gunpoint robbery of a jewelry store in Manhattan (the "Jewelry Store").  On August 25, 2019, Sutton and two co-conspirators walked into the Jewelry Store, brandished a silver firearm, bound the four employees with duct tape, forced an employee to open the safe, and — over the course of 15 minutes — looted the store of $3.4 million in jewelry while the terrified employees lay bound on the ground.  For this conduct, Sutton now awaits sentencing for Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2, and possession of a firearm, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.  The parties and the Probation Office agree that the applicable sentencing range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") is a term of imprisonment of 152 to 175 months.  For the reasons set forth below, a sentence within this range is sufficient but not greater than necessary to serve the purposes of sentencing.

**I.**     **Offense Conduct**

     At approximately 11:30 a.m. on August 25, 2019 — just eleven days after Sutton was discharged from state parole (PSR ¶ 48) — Sutton, a co-conspirator ("CC-2"), and co-defendant Pedro Davila walked into the Jewelry Store.  (PSR ¶ 11.)  At approximately 11:42 a.m., Sutton met with an employee in a back room of the Jewelry Store, where two other employees were

---

[1] As described in the Presentence Investigation Report ("PSR") revised April 4, 2022, Sutton's crimes of violence or weapons include:  (i) in 2000, New York drug and weapon offenses, for which he was sentenced to a total of six months imprisonment; (ii) in 2002, Connecticut assault and firearms offenses, for which he was sentenced to a total of three years' imprisonment, with six months suspended; (iii) in 2003, a Connecticut coercion offense, for which he was sentenced to five years' imprisonment, with two years suspended; (iv) in 2005, a Connecticut firearms offense, for which he was sentenced to one year's imprisonment; and (v) in 2007, a New York firearms offense, for which he was sentenced to five years' imprisonment.  (PSR ¶¶ 42–48.)

The Honorable Andrew L. Carter, Jr.                                                                 Page 2
October 24, 2022

already present.  (PSR ¶ 13.)  Sutton then pulled out a silver firearm and brandished it at the three
employees.  (PSR ¶ 13.)  A still image from the surveillance is shown below:



Sutton ordered the three employees to lay on the ground.  (PSR ¶ 13.)  CC-2 then stood
guard with his own firearm, while Sutton retrieved the fourth employee and ordered him to the
ground.  (PSR ¶ 14.)  Sutton continued to brandish his firearm at the prone employees:



The Honorable Andrew L. Carter, Jr.                                                                 Page 3
October 24, 2022

CC-2 and Davila then bound the hands and feet of the four employees using zip ties and duct tape.  (PSR ¶ 15.)  With the employees secure, Sutton, Davila, and CC-2 began to loot the Jewelry Store.  (PSR ¶ 15.)  Gun in hand, Sutton ordered one of the store employees into a different room with a safe.  (PSR ¶ 16.)  A still image of Sutton at the safe is shown below:



After the employee told Sutton how to open the safe, Sutton began to remove its contents. (PSR ¶ 16.)  Sutton then returned the employee to the floor of the back room.  (PSR ¶ 16.)  The three robbers continued to ransack the Jewelry Store, throwing what they could find into large bags.  Finally, at approximately 11:58 a.m., the three robbers exited the store in broad daylight, carrying approximately $3.4 million of stolen jewelry in their bags.  (PSR ¶¶ 17, 21.)

## II.    Plea and Applicable Guidelines Range

On August 29, 2019, Sutton and Davila were charged by complaint with Hobbs Act robbery, in violation of 18 U.S.C. § 1951, conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and brandishing a firearm, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), and 2.  On October 2, 2019, a grand jury returned an indictment charging Sutton and Davila with the same offenses.  On October 7, 2019, Sutton was arrested at a hotel in North Carolina.  (PSR ¶ 20.)  He was returned to this District and ordered detained.

On January 11, 2022, Sutton pleaded guilty, pursuant to a plea agreement, to Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Count Two), and the lesser-included offense of possession of a firearm, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 (Count Three).  In their plea agreement, the parties stipulated, for Count Two, to a total offense level of 24 and a criminal history category of V, which yields a Guidelines range of 92 to 115 months' imprisonment for Count Two.  Because the Guidelines range for Count Three is the mandatory minimum of 60

The Honorable Andrew L. Carter, Jr.                                                         Page 4
October 24, 2022

months' imprisonment, which must be consecutive to any other term of imprisonment imposed, the parties calculated a total Guidelines range of 152 to 175 months' imprisonment. The Probation Office concurs in these calculations. (PSR ¶¶ 34, 38, 51, 93.)

## III.   Discussion

### A.   Applicable Law

Although the Supreme Court held in *United States* v. *Booker* that the Guidelines are no longer mandatory, the Court instructed that district courts must still "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims." *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

| | |
|---|---|
| (A) | to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; |
| (B) | to afford adequate deterrence to criminal conduct; |
| (C) | to protect the public from further crimes of the defendant; and |
| (D) | to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. |

18 U.S.C. § 3553(a)(2).

### B.   A Guidelines Sentence Is Appropriate

A sentence within the Guidelines range of 152 to 175 months' months' imprisonment is sufficient, but not greater than necessary, to serve the purposes of sentencing in this case. After two decades of crime, including five felony convictions for crimes of violence or weapons, and mere days after his discharge from parole, Sutton committed a brazen armed robbery during which he brandished a firearm at four prone employees. It is only by good fortune that no one was killed. A sentence within the Guidelines range is necessary to reflect the seriousness of the offense, to account for Sutton's extensive criminal history, to achieve specific and general deterrence, and to protect the public from Sutton's future crimes.

The Honorable Andrew L. Carter, Jr.                                          Page 5
October 24, 2022

Sutton's crime is indisputably serious. Together with two co-conspirators, Sutton committed a daylight robbery of a Manhattan jewelry store. He threatened four employees at the point of a gun. He forced the employees to lay on the floor, in fear for their lives, while his confederates bound the employees' hands and feet. He forced one of the employees, at gunpoint, to open a safe. He looted the store, making off with $3.4 million in jewelry. He fled the state. This was a crime of violence, carefully planned and executed, that terrified its victims and easily could have gotten them killed. The gravity of the offense, standing alone, would warrant a lengthy term of imprisonment for each of its participants.

For Sutton, however, the seriousness of the offense is amplified by his lengthy history of serious crimes. Sutton is a felon many times over; he had no right to carry a gun, much less brandish one in an armed robbery. But clearly his multi-year sentences in New York and Connecticut for drugs, weapons, and violent offenses — earned over the course of two decades — have not persuaded him to change tack. Instead, Sutton has doubled down. A lengthy term of imprisonment is necessary to specifically deter Sutton from committing more violent crimes, or to protect the public if Sutton cannot be deterred.

The sheer brazenness of the crime also calls out for general deterrence. Sutton robbed a jewelry store in Midtown Manhattan in broad daylight and with high-definition surveillance footage rolling. On camera, Sutton brandished a gun while employees lay bound on the floor. Though the $3.4 million he looted is not a perfect measure of the seriousness of his crime, it is a proxy for the audacity of the crime in the public consciousness. A Guidelines term of imprisonment is necessary to vindicate the public faith in the rule of law and to deter others from committing similarly dangerous and brazen crimes.

## IV.  Conclusion

For all the foregoing reasons, a sentence within the Guidelines range of 152 to 175 months' months' imprisonment is necessary to serve the purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Alexander Li
Christopher Clore
Assistant United States Attorneys
(212) 637-2265/-1063

cc:    Angus James Bell, Esq. (by *ECF*)
       Carlos Santiago, Esq. (by *ECF*)